UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BRANDON M.,[1] | : | Case No. 3:22-cv-167 |
| | : | |
| Plaintiff, | : | |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Brandon M. brings this case challenging the Social Security Administration's denial of his application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), and the administrative record (Doc. #6).

**I.      Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on February 21, 2019, alleging disability due to several impairments, including lack of motor skills, social skills, cognitive problems, angiolipoma, loss of hearing in bilateral ears, episodes of syncope, heart problems, worsening of back pain due to bulging discs spinal stenos, insomnia, arthritis in hands and back, chronic fatigue, and multiple brain injuries. (Doc. #6-6, *PageID* #262). After Plaintiff's application was denied initially and upon reconsideration, he requested and received a telephone hearing before Administrative Law Judge (ALJ) Gregory G. Kenyon. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

 Step 1: Plaintiff has not engaged in substantial gainful activity since June 29, 2018, the alleged onset date.

 Step 2: He has the following severe impairments: a lumbar strain, a cervical strain, post-concussion syndrome, right wrist osteoarthritis, an anxiety disorder, a bipolar disorder, and attention deficit hyperactivity disorder.

 Step 3: He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

 Step 4: His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consist of a "light work [] subject to the following limitations: [Plaintiff] can never climb ladders, ropes, or scaffolds but he can occasionally climb ramps/stairs. He can occasionally crouch, crawl, kneel, stoop, or balance. [Plaintiff] cannot work around hazards such as unprotected heights or dangerous machinery. He can frequently use his right upper extremity for handling or fingering. [Plaintiff] is limited to simple, routine, and repetitive tasks with occasional superficial contact with

     coworkers and supervisors (superficial contact is defined as able to receive simple instructions, ask simple questions and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts). He can have no public contact nor can he work in teams or on tandem tasks. [Plaintiff] is precluded from fast-paced production work or jobs which involved strict production quotas. He is limited to performing jobs which involve very little if any, change in the job duties or the work routine from one day to the next."

Step 4:  He is unable to perform any past relevant work.

Step 5:  Considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #6-2, *PageID* #s 33-42). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since June 29, 2018. *Id.* at 42-43.

  The evidence of record is adequately summarized in the ALJ's decision (Doc. #6-2, *PageID* #s 31-43), Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #8), and Plaintiff Reply (Doc. #9). To the extent that additional facts are relevant, they will be summarized in the discussion below.

## II. Standard of Review

  Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v.*

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In his Statement of Errors, Plaintiff contends that the ALJ erred by using the wrong legal standard, thus creating an unwarranted additional procedural burden for Plaintiff to overcome. (Doc. #7 at *PageID #s* 1292-94). He further argues that the ALJ erred in evaluating the opinion from Donald Gronbeck, M.D. *Id.* at 1294-97. In response, the Commissioner maintains that the ALJ complied with the "fresh look" requirement by focusing mainly on new evidence from after the prior ALJ's adjudication. The ALJ also properly explained why he found the disability letter written by Dr. Gronbeck to be unpersuasive. (Doc. #8).

#### A. The ALJ's Compliance with *Drummond* and *Earley*

In *Drummond*, the Sixth Circuit held that the principles of *res judicata* apply to both disability applicants and the Commissioner in Social Security cases. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997). Specifically, the *Drummond* Court found that, absent

4

evidence of "changed circumstances" relating to an applicant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id*. at 842. In response to *Drummond*, the Social Security Administration subsequently issued Acquiescence Ruling ("AR") 98-4(6), which provides:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (Soc. Sec. Admin. June 1, 1998).

Thereafter, the Sixth Circuit clarified the scope of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). In *Earley*, the Sixth Circuit explained that *res judicata* only applies if an applicant files a subsequent application for the same period of disability that was rejected in the prior decision. *Id*. at 933. The Sixth Circuit pointed out that *Drummond* was never intended to extend *res judicata* to foreclose review of a new application for a new period of time, reasoning that "[a]ny earlier proceeding that found or rejected the onset of disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Id*. Rather, in cases where disability is alleged for a distinct period of time, the application is entitled to a "fresh look." *Id*. This, of course, is not to say that a subsequent ALJ cannot consider a prior ALJ's decision. After all, in the absence of new and additional evidence, the subsequent ALJ may treat the prior ALJ's findings as "legitimate, albeit not binding, consideration in reviewing a second application." *Id*.

5

In this case, Plaintiff's instant application for benefits involves a subsequent period of time following his prior application before ALJ Twilley. Specifically, ALJ Twilley's decision addressed whether Plaintiff had been under a disability from January 14, 2016 through the date of her decision on June 28, 2018, while Plaintiff's instant application alleges ongoing disability from June 29, 2018 through the date of ALJ Kenyon's decision on April 22, 2021. (Doc. #7-2, *PageID* #s 31-43). In other words, Plaintiff's present application involves an entirely distinct period of time—from June 29, 2018 through April 22, 2021—that was not considered by ALJ Twilley. Accordingly, under *Earley*, ALJ Kenyon was not constrained by ALJ Twilley's assessment in formulating Plaintiff's RFC for the period at issue. *See Earley*, 893 F.3d at 931.

Notwithstanding the foregoing, in his decision, ALJ Kenyon incorrectly stated that "[ALJ] Twilley's prior finding concerning [Plaintiff's] [RFC] is binding absent evidence of an improvement or change in condition since the prior hearing." (Doc. #6-2, *PageID* #37) (citing *Drummond.*, 126 F.3d 837; AR 98-4(6)). Ultimately, however, ALJ Kenyon did not adopt ALJ Twilley's RFC outright. Instead, ALJ Kenyon found that at there was a change in Plaintiff's condition since the prior decision and imposed a more restrictive RFC. (Doc. #6-2, *PageID* #s 36-41). The question then turns to whether ALJ Kenyon, despite his *citation* to the wrong legal standard, gave the evidence a fresh look required under *Earley*, and *applied* the correct legal standard.

Upon review of the record and the arguments of the parties, the undersigned finds that ALJ Kenyon did provide the necessary fresh look. Evidence of ALJ Kenyon's fresh look can be found throughout his opinion. For example, at step two of the disability analysis, ALJ Kenyon determined

that Plaintiff's attention deficit hyperactivity disorder constituted a severe impairment, whereas ALJ Twilley had previously found this impairment to not be severe. (*Compare* Doc. #6-2, *PageID* #34 *with* Doc. #6-3, *PageID* #88). Adding severe impairments that were not included in the prior ALJ's decision is a strong indicator that the current ALJ conducted a fresh look at the evidence. *See Sadler v. Comm'r of Soc. Sec.*, No. 18-11689, 2019 WL 4892419, at *6 (E.D. Mich. Aug. 16, 2019), *report and recommendation adopted sub nom. Sadler v. Saul*, No. 18-11689, 2019 WL 4627035 (E.D. Mich. Sept. 24, 2019) (finding that the ALJ gave the evidence a fresh look where the ALJ added two severe impairments not included in the earlier ALJ's decision).

ALJ Kenyon's fresh look is also present at step four of the disability analysis. In formulating Plaintiff's RFC, ALJ Kenyon thoroughly examined all of the evidence, including the evidence completed after ALJ Twilley's prior decision. As part of this review, ALJ Kenyon considered the findings of the state agency reviewing physicians. (Doc. #6-2, *PageID* #s 40-41). Notably, each of the four record reviewing physicians included language in their opinions that demonstrated their understanding that they were not bound by the earlier ALJ's findings. Specifically, on initial review, Venkatachala Dreenvias, M.D., reviewed Plaintiff's medical records and provided his findings in October 2019 regarding Plaintiff's physical limitations. (Doc. #6-3, *PageID* #s 118-121 ). In offering his recommendations, Dr. Dreenvias specifically pointed out that "[t]he ALJ/[Appeals Council] decision is not final, and adoption will not be addressed[,]" thus indicating his understanding that he was not bound by ALJ Twilley's decision. *See id.* at 121. Likewise, Robyn Murry-Hoffman, Ph.D., who also reviewed Plaintiff's medical records in October 2019, provided her findings on Plaintiff's mental limitations, and indicated that she did

7

not use ALJ Twilley's decision as a mandatory starting point by providing that "[t]he ALJ/[Appeals Council] decisions, dated 6/28/18 and 2/11/19 respectively, are not applied as this claim is still pending in federal court." *Id*. at 123. Further, Uma Gupta, M.D., and Cynthia Waggoner, Psy.D., the doctors who reviewed Plaintiff's medical records on reconsideration in 2020, used similar language that demonstrated their understanding that they were not bound by ALJ Twilley's prior findings. *Id*. at 133, 135. Additionally, in reaching their conclusions on Plaintiff's level of functioning, the state reviewing doctors primarily reviewed and relied upon evidence that was obtained after ALJ Twilley's decision in June 2018. *See id*. at 112-17, 127-35.

Further evidence that ALJ Kenyon provided an independent review of the evidence is demonstrated by the new evidence contained in the record that did not exist at the time of ALJ Twilley's decision. Of note, ALJ Kenyon ordered and considered new consultative exams, which were performed by Aivars Vitols, D.O., on September 25, 2019 and Christopher Ward, Ph.D., on September 27, 2019. (Doc. #6-8, *PageID* #s 1018-26, 1027-32). ALJ Kenyon also thoroughly considered treatment records from Plaintiff's treating physician, Donald Gronbeck, M.D., which also only involved the period currently under review and did not exist at the time of ALJ Twilley's decision. (*See* Doc. #6-2, *PageID* #38-39) (citing records from July 29, 2018 forward).

Most significantly, however, is the fact that the RFC that ALJ Kenyon crafted was far more restrictive than the prior RFC assessed by ALJ Twilley. *See Dennis D. v. Comm'r of Soc. Sec*., No. 3:22-CV-202, 2023 WL 2943822, at *5 (S.D. Ohio Apr. 14, 2023), *report and recommendation adopted sub nom. Dennis D. v. Comm'r of Soc. Sec. Admin*., No. 3:22-CV-00202, 2023 WL 3979215 (S.D. Ohio June 13, 2023) ("Had [the current ALJ] believed himself bound by [the earlier

ALJ's] decision[,] he would not have provided a different RFC."). For instance, while both ALJ Kenyon and ALJ Twilley found that Plaintiff could perform a reduced range of light work, ALJ Kenyon included additional limitations, such as the restriction that Plaintiff could only occasionally balance and could only "frequently use his right upper extremity or handling or fingering." (*Compare* Doc. #6-2, *PageID* #s 36-37 *with* Doc. #6-3, *PageID* #90). Additionally, as for Plaintiff's mental limitations, ALJ Kenyon further restricted him to only "simple, routine, and repetitive tasks[.]" *Id*. at 37. Further, while ALJ Twilley found that Plaintiff could handle "occasional interaction with coworkers and supervisors[,]" ALJ Kenyon further restricted Plaintiff to only "only occasional *superficial* contact with coworkers and supervisors." *Id*. at 37, 90 (emphasis added). Lastly, as opposed to ALJ Twilley's finding that Plaintiff could "handle occasional changes in work processes[,]" ALJ Kenyon specified that he be "limited to performing jobs which involve very little[,] if any, change in the job duties or work routine from one day to the next." *Id*. Based on these changes, the Court is satisfied that ALJ Kenyon provided an independent review of the evidence prior to formulating Plaintiff's RFC. *See Dennis D*., 2023 WL 2943822, at *5 (holding that the current ALJ provided a fresh look under *Earley* based, in part, on the fact that he formulated a different RFC than the prior ALJ).

In short, ALJ Kenyon provided the fresh look under *Earley* that Plaintiff was entitled to. Accordingly, ALJ Kenyon applied the correct legal standard, and Plaintiff's assignment of error is not well taken.

### B.  Plaintiff's Mental RFC and Evaluation of Dr. Gronbeck's Narrative Assessment

Plaintiff also alleges that ALJ Kenyon erred in his assessment of Plaintiff's primary care physician, Donald Gronbeck, M.D.'s letter when crafting his mental RFC.  (Doc. #7, *PageID* #s 1294-97).  An individual's RFC "is defined as the most [he] can still do despite the physical and mental limitations resulting from [his] impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a).  The ALJ is responsible for assessing an individual's RFC.  20 C.F.R. § 404.1545(c) ("If your case is at the administrative law judge hearing level …, the administrative law judge … is responsible for assessing your residual functional capacity.").  The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- *i.e.*, opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source or other acceptable medical sources."  Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted).  "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record."  *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).  If substantial evidence supports the ALJ's RFC assessment, "the Court defers to that determination even in the face of substantial evidence supporting the opposite conclusion."  *Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 WL 4468414, at *4–5 (6th Cir. July 12, 2021) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009)).

Plaintiff asserts that ALJ Kenyon erred in his assessment of his mental RFC based on his analysis of Dr. Gronbeck's narrative assessment. In addition to the medical records from his

treatment of Plaintiff, Dr. Gronbeck submitted a letter on his behalf on August 17, 2018. (Doc. #1287). In the letter, Dr. Gronbeck detailed how he has seen Plaintiff "slowly deteriorate" since he started treating him in July 2014. *Id.* According to Dr. Gronbeck, Plaintiff suffers from "post concussive syndrome and traumatic encephalopathy." *Id.* As a result of the traumatic encephalopathy, Plaintiff exhibits "emotional instability" and "has a lot of outbursts of anger." *Id.* He has used many medications with "varying degrees of success[,]" but nothing has been able to control his symptoms long term. *Id.* Dr. Gronbeck further detailed that he has been able to "manage[] [Plaintiff's] endocrine dysfunctions including hypogonadism[]" and that he has been "checked for vitamin deficiencies" as well as "monitor[] his electrolytes." *Id.* In concluding, Dr. Gronbeck stated that his "medical opinion is that [Plaintiff] is totally disabled. He is never going to be able to hold down gainful employment and this is only going to get worse." *Id.*

Upon review of Dr. Gronbeck's letter, the ALJ stated, "[w]hile Dr. Gronbeck attributed [Plaintiff's] problems to concussive syndrome, traumatic encephalopathy, and related emotional instability, he does not provide precise limitations of specific symptoms. This leaves the undersigned with little for comparison purposes." (Doc. #6-2, *PageID* #s 38-39).

In his Statement of Errors, Plaintiff argues that ALJ Kenyon erred in dismissing the "August 2018 narrative assessment of Donald Gronbeck, M.D. because it allegedly does not provide specific symptoms." (Doc. #7, *PageID* #1294). According to Plaintiff, "this is error because Dr. Gronbeck specifically noted that [Plaintiff] suffers from emotional instability and 'has a lot of outbursts of anger.'" *Id.* at 1294-95. However, as set forth above, ALJ Kenyon did not reject Dr. Gronbeck's statements because he did not detail Plaintiff's symptoms; instead, he

rejected the opinion because Dr. Gronbeck did not "provide *precise limitations* of specific symptoms." (Doc. #6-2, *PageID* #s 38-39) (emphasis added). The ALJ was entitled to reject Dr. Gronbeck's opinion for failing to provide specific functional limitations. *See e.g., Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 431 (6th Cir. 2018) (finding that an ALJ may properly discount a vague opinion that does not provide any specific functional limitations); *Foreman v. Comm'r of Soc. Sec.*, No. 2:19-cv-454, 2019 WL 5287913, at *7 (S.D. Ohio Oct. 18, 2019), *report and recommendation adopted*, 2020 WL 1316431 (S.D. Ohio Mar. 20, 2020) (the ALJ properly discounted physician's opinions "because they were unclear and unhelpful in ascertaining Plaintiff's functional limitations").

Indeed, Dr. Gronbeck's letter is not a "medical opinion" as defined by the regulations. *See* 20 C.F.R. § 404.1513(a)(2) (defining a "medical opinion" as "a statement from a medical source about what [an individual] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities…"). Dr. Gronbeck's letter does not include "a statement… about what [Plaintiff] can still do despite [his] impairment(s)" or a statement about "whether [Plaintiff] ha[s] one or more impairment-related limitations or restrictions" in the abilities listed in 20 C.F.R. § 404.1513(a)(2)(i)-(iv). Accordingly, since Dr. Gronbeck's letter did not include such medical judgments, ALJ Kenyon had no duty to weigh his observations in formulating Plaintiff's RFC. *See Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) ("Since Dr. Naum made no medical judgments, the ALJ had no duty to give such observations controlling weight or provide good reasons for not going so.").

Moreover, regarding Dr. Gronbeck's conclusions that Plaintiff is "totally disabled" and will never "be able to hold down gainful employment[,]" these findings are determinations reserved for the Commissioner, and ALJ Kenyon was not required to analyze Dr. Gronbeck's opinion in that regard. *See* 20 C.F.R. § 404.1520b(c) (providing that for "[e]vidence that is inherently neither valuable nor persuasive[,]" the Commissioner "will not provide any analysis about how [he or she] considered such evidence in [his or her] determination or decision, even under § 404.1520c[.]"); 20 C.F.R. § 404.1520b(c)(3)(i) (providing that "[s]tatements that [an individual] [is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work" are "issues reserved to the Commissioner" and are considered to be "inherently neither valuable nor persuasive to the issue of whether [an individual] [is] disabled or blind under the Act."); s*ee also Warner v. Comm'r of Soc., Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.")) (brackets omitted).

As noted above, ALJ Kenyon found that Plaintiff had the RFC to perform light work with certain limitations. In formulating the mental limitations included in this RFC, ALJ Kenyon primarily relied on the opinions of the record-reviewing psychologists, Robyn Murry-Hoffman, Ph.D. and Cynthia Waggoner, Psy.D. In October 2019, Dr. Murry-Hoffman reviewed Plaintiff's medical records and opined that Plaintiff was moderately limited in his ability to sustain concentration and persistence and, therefore, "could work in a setting which is not fast-paced and does not require strict time/production demands." (Doc. #6-3, *PageID* #122). Dr. Murry-Hoffman also found that Plaintiff's moderate social limitations would limit him to "relat[ing] superficially

13

to coworkers and supervisors, and minimally with the general public." *Id*. at 123. Finally, due to Plaintiff's moderate limitations in his ability to adapt and manage himself, Dr. Murry-Hoffman opined that Plaintiff be limited to "work in a setting with infrequent changes." *Id*. On reconsideration, Dr. Waggoner reviewed Plaintiff's records and endorsed all of Dr. Murry-Hoffman's recommendations while also adding that Plaintiff was only able "to complete multistep instructions given repetition" whish she included to "reflect mild limitations in understanding and memory limitations[.]" *Id*. at 134-35.

In reviewing these opinions, ALJ Kenyon explained that he considered the State agency assessments but did not find them "wholly persuasive" because the more recent evidence, including Plaintiff's testimony demonstrated that he was "more limited in his abilities than previously concluded." *Id*. For instance, while the state agency psychologists found Plaintiff's moderate social limitations restricted him to "relat[ing] superficially to coworkers and supervisors, and minimally with the general public[,]" (Doc. #6-3, *PageID* #s 123, 134), ALJ Kenyon further limited Plaintiff to working with co-workers and supervisors on both an occasional and superficial basis and eliminated any interaction with the public. (Doc. #6-2, *PageID* #37). Similarly, while Dr. Waggoner found that Plaintiff could "complete multistep instructions given repetition," (Doc. #6-3, *PageID* #135), ALJ Kenyon further restricted Plaintiff to only "simple, routine, and repetitive tasks." (Doc. #6-2, *PageID* #37). ALJ Kenyon also incorporated Drs. Murry-Hoffman and Waggoner's recommendations related to Plaintiff's ability to sustain concentration and persistence as well as in his ability to adapt and manage himself by including limitations in his RFC that "precluded [him] from fast-paced production work or jobs which involved strict

production quotas" and restricted him "to performing jobs which involve very little[,] if any, change in the job duties or the work routine from one day to the next." *Id*.

ALJ Kenyon's review of these opinions is supported by substantial evidence. Notably, ALJ Kenyon accommodated all of the mental restrictions recommended by the state agency psychologists and imposed even greater restrictions in areas where he found Plaintiff's subjective complaints and the medical evidence of record to merit more mental limitations. (*See* Doc. #6-2, *PageID* #s 36-41). Thus, to the extent that Plaintiff maintains that the ALJ erred in reviewing these opinions, his argument lacks merit. *See Putman v. Comm'r of Soc. Sec.*, No. 2:20-CV-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) ("An ALJ does not commit reversible error when discounting a medical opinion or an administrative finding because the ALJ determines that a claimant is more limited than opined."); *see also Mosed v. Comm'r of Soc. Sec.*, No. 2:14–cv–14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) report and recommendation adopted, 2016 WL 1084679 ("Plaintiff's argument that the ALJ erred in assessing a more restrictive RFC than that opined by the State agency consultants is curious and unavailing.")

In short, ALJ Kenyon appropriately considered all of the evidence of record and rendered a mental RFC assessment, which was supported by substantial evidence, including Plaintiff's complaints, medical records, and state medical opinions. *See* 20 C.F.R. § 404.1545(a)(3) (stating that RFC assessments should be "based on all of the relevant medical and other evidence"). Further, while it is true that the ALJ's decision must be supported by substantial evidence, it is Plaintiff who "bears the burden of proving the existence and severity of limitations caused by [his] impairments" through step four of the sequential evaluation process. *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Accordingly, it was Plaintiff's burden to convince the ALJ that these impairments mandated stricter limitations. He failed to do so. *See, e.g., Cejka v. Comm'r of Soc. Sec.,* No. 12-11102, 2013 WL 1317213, at *15 (E.D. Mich. Feb. 27, 2013), *report and recommendation adopted*, No. 12-11102-DT, 2013 WL 1294133 (E.D. Mich. Mar. 29, 2013) ("Plaintiff acknowledges that no treating physician imposed any limitations on plaintiff as a result of her carpal tunnel syndrome, and does not point to any limitations imposed by any consulting or examining physician."). For all these reasons, Plaintiff's statement of error is without merit.

### C. The ALJ's Consideration of the Vocational Expert's Testimony at Step 5

Plaintiff's final assignment of error concerns the ALJ's consideration of a hypothetical posed to the vocational expert at the hearing. (Doc. #7, *PageID* #s 1296-97). Specifically, he contends that ALJ Kenyon erred in not considering the vocational expert's testimony that employers have "zero tolerance" for "angry outbursts" in the unskilled occupations that the vocational expert had previously identified. *Id*. (citing Doc. #6-2, *PageID* #78).

Here, it is true that the vocational expert testified that employers had "zero tolerance" for "angry outbursts." However, the fact that ALJ Kenyon asked about the RFC of a hypothetical person with "angry outbursts" does not somehow bind him to including it into Plaintiff's RFC. On the contrary, simply posing a hypothetical question to the vocational expert does not result in a finding about a plaintiff's RFC or bind the ALJ where the medical record does not support the inclusion of such limitations. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019)). In this case, the only evidence related to Plaintiff's "angry outbursts" was from Dr. Gronbeck's August

16

17, 2018 letter. However, as previously discussed, this statement was too vague to be considered a functional limitation and so ALJ Kenyon reasonably did not review it as a medical judgment. *See Bass*, 499 F.3d at 510. Moreover, as also explained above, ALJ Kenyon's RFC finding is supported by substantial evidence, and so he was not required to accept the vocational expert's testimony based on limitations that were not consistent with the RFC finding. Therefore, this assignment of error is also without merit.

Based on the foregoing, Plaintiff's Statement of Errors is not well-taken.

### IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Statement of Errors (Doc. #7) is **DENIED;**
2. The Commissioner's non-disability determination is **AFFIRMED**; and
3. The case is terminated on the docket of this Court.

September 29, 2023                        *s/Peter B. Silvain, Jr.*
                                          Peter B. Silvain, Jr.
                                          United States Magistrate Judge